# EXHIBIT A:
# DECISION ON PLAINTIFF'S MOTION
# FOR SUMMARY JUDGMENT  AND
# OBJECTION TO DEBTOR'S CLAIM
# OF EXEMPTIONS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

      Rodney Ryan and
      Jill Ryan,                Case No. 19-29833-beh

          Debtors.           Chapter 7

Branko PRPA MD LLC,

          Plaintiff,          Adversary No. 19-02209-beh

v.

Rodney and Jill Ryan, and
Fortune & McGillis, S.C.,

          Defendants.

**DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS**

      A state administrative order confirming settlement of a worker's
compensation claim placed funds for the claimant-employee's medical care
providers in a trust account pending disbursement. The same order provided
separate payment directly to the employee, and a percentage fee directly to his
counsel. The employee then filed for bankruptcy, and he and his worker's
compensation counsel sought to prevent the funds designated for medical
expenses from reaching those providers by having the debtor exempt them in
his bankruptcy case. One of the medical care providers to whom the debtor
owed a substantial sum initiated this adversary proceeding seeking to protect

his interest in the segregated funds by asking the Court to declare an express trust or to impose a constructive trust. For the same reasons, he objected to the debtors' claimed exemption in the funds.

After a review of the summary judgment briefs, affidavits, oral presentations from the plaintiff and defendants, as well as the filings in both this adversary proceeding and the debtor-defendants' main bankruptcy case, the Court grants summary judgment in favor of the plaintiff-creditor.

## JURISDICTION

Because this dispute concerns exemptions from property of the estate, it is a core proceeding under 28 U.C. § 157(b)(2)(B). The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a).

## BACKGROUND

### A.  Factual Background

Debtor-defendant Rodney Ryan claims to have been injured at his workplace, Gleason Marvin Contractors, Inc. (the Employer) on August 22, 2016. AP-ECF Doc. No. 21, ¶ 8.[1] On September 8, 2016, Ryan presented a worker's compensation claim to his Employer's insurer, West Bend Mutual Insurance Co. (the Insurer), which, in turn, reported the claim to the Department of Administration, Division of Hearings & Appeals, Office of

---

[1] Citations to the docket in the Bankruptcy Case No. 19-29833-beh are noted by "ECF Doc. No." Citations to the docket in the Adversary Proceeding No. 19-02209-beh are noted by "AP-ECF Doc. No."

Worker's Compensation Hearings (OWCH).[2] *Id.* Ryan was represented in the

matter by Attorney Richard Fortune of Fortune & McGillis law firm (Fortune, or

Fortune firm). AP-ECF Doc. No. 20, ¶ 3.

After Ryan's August 2016 injuries, Branko Prpa MD, LLC (Prpa) provided

substantial medical services to him. AP-ECF Doc. No. 21, ¶ 9. At the time Mr.

Rodney Ryan and Mrs. Jill Ryan filed their joint bankruptcy case, they owed

Prpa at least $445,684.00. ECF Doc. No. 15, at 25.

Ryan's worker's compensation claim did not go to a final administrative

hearing. Instead, via signatures dated August 27, 2019 and September 6,

2019, Ryan, Fortune, the Employer, and the Insurer entered into a "full and

final" Compromise Agreement. AP-ECF Doc. No. 1-1; and 51-2, at 4.[3] According

to the Agreement, Ryan claimed to have sustained an injury "while performing

services growing out of and incidental to his employment," for which he sought

"various benefits under Chapter 102 [the Worker's Compensation Act of

Wisconsin] ("the Act"), including but not limited to, indemnity and medical

---

[2] The complaint asserted that the Insurer reported Ryan's claim, which the Insurer and
Employer contested, to the Department of Workforce Development. But effective January 11,
2016, the Department of Workforce Development handles all non-litigated matters, while the
Department of Administration, Division of Hearings & Appeals, Office of Worker's
Compensation Hearings (OWCH), handles all litigated claims. *See* Department of Workforce
Development: Insurance Letter # 507 (02/12/16), cited in 17 Wis. Prac., Workers' Comp. Law
§ 29:1.

[3] The Compromise Agreement was attached to the Adversary Complaint as Exhibit A but was
filed under seal. Later, the plaintiff filed a redacted, publicly available version as Exhibit A to
the Declaration of Timothy H. Posnanski, in support of the motion for summary judgment. The
redacted information is contained in the Rider, and relates to the Workers' Compensation
Medicare Set-Aside Arrangement (WCMSA), which is incorporated by reference into the
Agreement, but not at issue here, *see infra* n.5.

expense." *Id.* The Compromise Agreement also expressly stated that the Employer and the Insurer disputed that Ryan had sustained a compensable injury, and therefore denied liability. AP-ECF Doc. No. 51-2, at 5. Nevertheless, the Employer and Insurer agreed to settle any potential liability under the Act as follows:

> **IT IS FURTHER STIPULATED AND AGREED** by and between the Applicant, the Employer and the Insurer that as and in full and complete COMPROMISE and settlement of any and all liability of the Employer and Insurer to the Applicant under the Worker's Compensation Act of Wisconsin, or otherwise, . . . the Employer and Insurer will pay as follows: $150,000 to Rodney Ryan, minus attorney fees and costs listed below; *$400,000 to the Trust Account of Fortune & McGillis for disbursement to medical providers and lienholders, it being understood that from any balance remaining Mr. Ryan shall receive 80% and Fortune & McGillis shall receive 20%;* . . . .
>
> **IT IS FURTHER STIPULATED AND AGREED** that the Division of Hearings and Appeals may enter its award in accordance with this Agreement forthwith, and without further notice to the parties and that said award may provide for the direct payment to Applicant's attorney for fees of $30,0000, and [no costs].

AP-ECF Doc. No. 51-2, at 5–6 (emphasis added). On September 17, 2019, the Compromise Agreement was approved by Order of Administrative Law Judge Donald Doody of the OWCH. AP-ECF Doc. No. 1-2; and 51-2, at 24–25.[4] The OWCH Order mirrors much of the Compromise Agreement and provides, in pertinent part:

> Within 21 days from the date of this order, the respondent [employer Gleason Marvin Contractors, Inc.] and insurance carrier shall pay to the applicant, Rodney Lee Ryan, the sum of One hundred twenty thousand dollars ($120,000.00); to the applicant's attorney, Richard A. Fortune,

---

[4] The OWCH Order originally was filed in a publicly available version as Exhibit B to the Adversary Complaint, and later was re-filed with the redacted version of the Compromise Agreement.

the sum of Thirty thousand dollars ($30,000.00) as fees; and *to the Trust Account of Fortune & McGillis SC, the sum of Four hundred thousand dollars ($400,000.00) for disbursement to medical providers and lienholders*, it being understood that from any balance remaining the applicant, Rodney Lee Ryan, shall receive 80 percent and Fortune & McGillis SC shall receive 20 percent.

AP-ECF Doc. No. 51-2, at 25 (emphasis added). There is no evidence in the summary judgment record of any negotiations, or payments in full or in part, to medical providers or lienholders after the OWCH Order was entered.

Less than one month after Judge Doody entered his Order approving the compromise, Mr. and Mrs. Ryan filed for Chapter 7 bankruptcy relief. ECF Doc. No. 1. In their Amended Schedule A/B, the debtors listed the payment under the OWCH Order as a "financial asset," and recorded it as having a total value of $781,000.00.[5] ECF Doc. No. 41, at 6. In their Amended Schedule C, the debtors exempted the same amount, citing Wisconsin Statute § 102.27. *Id.* at 9.

As for their debts, in addition to the $445,684.00 that the debtors reported owing Prpa for medical services, the debtors' schedules also listed approximately $425,000.00 in other unsecured medical debt. ECF Doc. No. 15, at 16–31. The debtors also scheduled the Fortune firm as an unsecured creditor, owed $0.00, with the notation "NOTICE ONLY." *Id.* at 22.

[5] This total includes the $271,834.00 Workers' Compensation Medicare Set-Aside Arrangement, which is not at issue here. *See In re Arellano*, 524 B.R. 615, 621–22 (Bankr. M.D. Pa. 2015) (describing WCMSA funds as an express trust, and as being excluded from property of the estate under 11 U.S.C. § 541(d)).

**B.**     **Procedural Posture**

On December 16, 2019, Prpa, as a scheduled creditor, filed an objection to the debtors' claimed exemption of the payment under the OWCH Order, specifically objecting to the exemption of the $400,000 held in the Fortune firm trust account. ECF Doc. No. 21. Prpa simultaneously filed this adversary proceeding against the debtors and the Fortune firm. AP-ECF Doc. No. 1.

A month later, on January 22, 2020, the debtors received a joint discharge in their "no asset" Chapter 7 bankruptcy. ECF Doc. No. 43.

Prpa moved for summary judgment on Counts I and II of its adversary complaint. AP-ECF Doc. No. 51.[6] The Court held oral arguments and thereafter the parties filed supplemental briefing at the Court's request.

**C.**     **The Plaintiff's Argument**

Plaintiff Prpa asserts two theories to argue that the $400,000 held in the Fortune firm trust account is not property of the estate. First, under the plain language of the OWCH Order, the parties created an express trust containing $400,000 for the benefit of medical providers and lienholders. Second and alternatively, because those funds were not properly disbursed, the Court should impose a constructive trust for the benefit of medical providers like Prpa. Prpa contends that the $400,000 is not property of the estate under either theory, therefore the debtors' claimed exemption in those funds is

---

[6] Because the legal questions presented in this adversary proceeding are identical to the questions raised in the objection to exemption in the main bankruptcy case, this Decision resolves both matters.

invalid. If the parties (Ryan, the Employer, and the Insurer) had intended the settlement amounts to be a lump sum for the sole benefit of Ryan, then the Agreement (and Order confirming it) could have provided for such a single lump sum. Instead, the OWCH Order specifically "carved out" a payment amount for Ryan, including a statutory fee amount for the Fortune firm, and then an amount for medical providers and lienholders.[7] Prpa argues that the only interest that the debtor may claim in the $400,000 is a possible reversionary interest.

## D.    The Defendants' Arguments

In their responses, both the Ryans and the Fortune firm affirmatively assert that all funds itemized in the Order are estate property which can be fully protected by an exemption created by the Wisconsin Worker's Compensation Act. The defendants argue that they hold both legal and equitable title to the $400,000 funds, and any attempt of creditors to claim an interest would be contrary to the worker's compensation statutory scheme. The defendants' various additional arguments will be addressed below, and for the reasons discussed, are without merit.

---

[7] In briefing, Prpa also asked that this Court direct the entire $400,000 be turned over to plaintiff. But at oral argument, Prpa's counsel agreed that if the Court determined those funds were not property of the estate, then collection efforts by (any of) the medical care providers become a state law matter, outside this Court's core jurisdiction.

**ANALYSIS**

**A. Summary Judgment**

    **1. Legal Standards**

Summary judgment is appropriate if the pleadings and affidavits on file reveal no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). At the summary judgment stage, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The moving party bears the burden to establish that there is no genuine issue about any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

The primary issues are (1) whether debtor Rodney Ryan had an interest in $400,000 subject to disbursal by the OWHC Order and directed to be held in the trust account of the Fortune law firm before he filed his bankruptcy petition, and (2) whether he properly claimed an exemption in those funds. "Before an exemption [of property] can be claimed, it must be estate property." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014). The Bankruptcy Code, at 11 U.S.C. § 541(a)(1), provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The Seventh Circuit has declared that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within

the reach of § 541." *In re Yonikus*, 996 F.2d at 869. But that broad umbrella does not expand the rights of a debtor beyond what existed as of filing. *In re Brown*, 601 B.R. 514, 517 (Bankr. C.D. Ill. 2019); *see also In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) ("Filing a bankruptcy petition does not expand or change a debtor's interest in an asset . . . . 'To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate.'"). The Court must look to state law to determine the nature and extent of a debtor's interest on the petition date. *Butner v. United States*, 440 U.S. 48, 54–55 (1979).

In addition, if the Court finds that the $400,000 is held in an express trust or should it impose a constructive trust on those monies, the $400,000 would be excluded from the bankruptcy estate through 11 U.S.C. § 541(d). Section 541(d) provides:

> (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The legislative history of this provision illustrates some of the intended non-application of § 541:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for

> which the payment was reimbursement, the payment would actually be
> held in constructive trust for the person to whom the bill was owed.

H.R. Rep. No. 595, 95th Cong., 1st Sess., 367–8 (1977); S. Rep. No. 989, 95th

Cong., 2d Sess., 82–3 (1978) reprinted in 1978 U.S. Code Cong. & Admin. News

5787. Debtors who hold property in trust for the benefit of another can claim

only bare legal title, and such trust property is not property of the estate. *In re*

*Marrs-Winn Co., Inc.*, 103 F.3d 584, 589 (7th Cir. 1996) (citing *United States v.*

*Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (providing in *dicta* that

"Congress plainly excluded property of others held by the debtor in trust at the

time of the filing of the petition")). As the Seventh Circuit has described

(discussing assets held in a constructive trust), "[t]he transferee in possession

does not own the property any more than a parking garage owns a customer's

car, or a pickpocket owns the wallet he swipes from a purse. Nor does the

transferee become the rightful owner of such property by filing a bankruptcy

petition." *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 305 (7th Cir.

2014).

### 2.    Record on Summary Judgment

At oral argument, all parties agreed that the Compromise Agreement and

OWCH Order presented to the Court represent accurate copies of those

documents. *See* AP-ECF Doc. No. 62, at 5, 44. In its objection to summary

judgment, the Fortune firm (and, to a lesser degree, Ryan) goes into great detail

about the discovery, communications, and intentions of the parties during the

time preceding the settlement and entry of the OWCH Order. Fortune

submitted proposed "additions" to Prpa's Statement of Uncontradicted Facts in an unsworn declaration, and attached several exhibits.

When deciding a matter on summary judgment, the Court may consider only *admissible* evidence. *Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009). Fortune's Exhibits B, C, E, and H are reports made by medical expert witnesses in relation to and in preparation for Ryan's worker's compensation claim. AP-ECF Doc. No. 52-2, Exhibit B, at 3; Exhibit C at 17; Exhibit E, at 38; Exhibit H, at 57. These exhibits cannot be authenticated by Fortune, as he has no personal knowledge of the information contained in the documents as required by Fed. R. Evid. 901(b)(1), and he was not qualified as an expert witness who generated or relied upon those reports under Fed. R. Evid. 702. They will not be considered by the Court.

Exhibits A, D, F, G, J, K, L, M, N, and O are communications via letter or e-mail, describing information such as the Insurer's denial of the claim or amounts of medical bills. AP-ECF Doc. No. 52-2, Exhibit A, at 1; Exhibit D, at 36; Exhibit F, at 54; Exhibit G, at 55; Exhibit J, at 71; Exhibit K, at 73; Exhibit L, at 74; Exhibit M, at 75; Exhibit N, at 76; Exhibit O, at 77. Any statements therein made by Fortune himself will be accepted for consideration. Any statements therein made by other parties, however, are hearsay; Fortune offered no exceptions or exclusions from the rule against hearsay under Fed. R. Evid. 802. These statements may be considered by the Court only to the extent that they were stated in communications with or received by Fortune, but not

for the truth of the matter asserted.[8] Exhibit P is an unsworn declaration made by the Insurer's attorney, and purports to conclude that the "Compromise Agreement did not create an express or implied trust." AP-ECF Doc. No. 52-2, Exhibit P, at 79–81. Testimony giving legal conclusions on the outcome of a case is inadmissible. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). The Court will not consider Exhibit P.

Exhibit I is a foreclosure judgment issued by the Circuit Court of Racine County. The Court may take judicial notice of contents of a state court docket under Federal Rule of Evidence 201 because they are matters of public record available via an online database commonly known as CCAP (Consolidated Court Automation Programs). *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018). AP-ECF Doc. No. 52-2, Exhibit I, at 67. The Court need not consider Exhibit I, however, because under the applicable interpretive rules discussed below, the order does not aid in determining the plain meaning of the OWHC Order.

Finally, to the extent that letters and communications described above are admissible or could be deemed admissible, the supplemental facts proposed by the Fortune firm are not outcome-determinative. Any factual disputes argued or created thereby are not material for purposes of this decision. *See Cuene v. Peterson (In re Peterson)*, 604 B.R. 751, 762 (Bankr. E.D. 2019), *aff'd sub nom. Peterson v. Cuene*, 623 B.R. 758 (E.D. Wis. 2021) (citing

---

[8] With its reply on summary judgment, Prpa submitted Exhibit A, which is an e-mail exchange between Fortune and Prpa's counsel. The Court does not consider this for the same reasons detailed above.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997) ("For a fact to be material, it must be 'outcome determinative under governing law.'")).

Accordingly, the record on summary judgment consists of the Compromise Agreement and the OWCH Order, as well as the debtors' petition and schedules. The Court finds that there are no genuine issues of material facts, and this matter may be decided as a question of law.

**B.    Was An Express Trust Established?**

Prpa requests an order declaring that the $400,000 in funds approved by the OWCH Order for "medical providers and lienholders" are held in an express trust. The plaintiff carries the burden of proof to show the existence of a valid trust. *In re Associated Enterprises, Inc.*, 234 B.R. 718, 720 (Bankr. W.D. Wis. 1999). Under Wisconsin law, a trust is created once three elements exist:

> (1) A trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary.

*Id.* at 721 (quoting *Sutherland v. Pierner*, 249 Wis. 462, 467, 24 N.W.2d 883 (1946); *see also Wisconsin Med. Soc'y, Inc. v. Morgan*, 2010 WI 94, ¶ 62, 328 Wis. 2d 469, 502–06, 787 N.W.2d 22 (describing the same three elements of a trust).

To satisfy these requirements, Prpa contends that the OWHC Order created an express trust by directing payment to the Fortune firm as trustee, designating Ryan's medical providers and lienholders as the beneficiaries, and

setting the trust *res* as the $400,000 in the Fortune firm's trust account. Prpa argues that the language of the OWHC Order is plain.

Despite originally agreeing that the Compromise Agreement and Order are plain, the defendants have reversed course and now argue the terms are ambiguous. Fortune contends that "trusts are not created by the language of a contract. . . [but] are created by the *intent* of the contracting parties," AP-ECF Doc. No. 65, at 2 (emphasis in original), and asserts that the Court must accept extrinsic evidence to determine the parties' intent while negotiating the Compromise Agreement, or even efforts at corresponding with the administrative law judge.

But long ago the Wisconsin Supreme Court established that the focus should be on the terms of the Order, and not the parties' stipulation or how they got there. *See Dowe v. Specialty Brass Co.*, 219 Wis. 192, 195, 262 N.W. 605 (1935) (rights to the proceeds of a workman's compensation award based upon a stipulation were not contractual in nature, but determined in accordance with the terms of the Act; "[t]he contract or stipulation was ineffectual unless and until approved by the Industrial Commission, and then it merely formed the basis of the award, the proceeds of which must be disposed of in accordance with the terms of the statute"). Interpretive rules applicable to court orders are the same as those applicable to contract interpretation, including, "[i]f there is no ambiguity on the face of the stipulation or judgment, the subjective intent of the parties is irrelevant." *Wright v. Wright*, 92 Wis. 2d 246, 257, 284 N.W.2d 894 (1979) ("Judgments are

to be construed in the same manner as other written instruments. . . . A judgment that is clear on its face is not open to construction but if it is ambiguous, construction is allowed and the court will consider the whole record, including pleadings, findings of fact and conclusion of law, and the judgment itself."). *See also In re Boyd's Estate*, 18 Wis. 2d 379, 118 N.W.2d 705 (1963) (same). Consequently, terms of an order, like "contract terms[,] should be given their plain or ordinary meaning." *Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 196, 716 N.W.2d 807.

Accordingly, the Court first considers whether the text of the Order is plain. If its meaning is plain, it is not open to construction and no extrinsic evidence can be considered. Nor could, under any circumstance, the subjective intent of the parties convert the text of the OWCH Order into superfluous verbiage or a "wink wink" agreement,[9] under which the express provision for funds in a trust account for benefit of medical providers and lienholders is ignored as surplusage. *See also Employer's Health Ins. Co. v. Tesmer*, 161 Wis. 2d 733, 740 n.2, 469 N.W.2d 203 (Ct. App. 1991) ("Presumably, [the Division] would not approve a compromise entered into as a ruse to allow the compensation carrier to avoid liability to the health insurance provider.").

While the defendants try to argue the OWHC Order is ambiguous as to whether it established an express trust for the benefit of medical providers and

---

[9] A term used by Ryan's bankruptcy counsel at oral arguments, *see* AP-ECF Doc. No. 62, at 28, ¶ 18.

lienholders, they never identify which terms are ambiguous. In fact, as to the elements of trustee, beneficiaries and trust *res*, the OWHC Order is clear. The pertinent text of the Order reads:

> . . . [w]ithin 21 days from the date of this order, the respondent and insurance carrier shall pay . . . to the Trust Account of Fortune & McGillis SC, the sum of Four hundred thousand dollars ($400,000.00) for disbursement to medical providers and lienholders, it being understood that from any balance remaining the applicant, Rodney Lee Ryan, shall receive 80 percent and Fortune & McGillis SC shall receive 20 percent. . . .

The Court agrees with Prpa that the OWHC Order establishes the elements of an express trust. In directing that the $400,000 be held in the Fortune firm trust account, the OWHC Order places Fortune and his firm in the role of trustee, under the requirements of Wis. S.C.R. 20:1.15(b)(1) and (d)(1), to deal with those funds "for the benefit of another." *Id.*; *See* Wis. S.C.R. 20:1.15(b)(1) ("A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation."); Wis. S.C.R. 20:1.15(d)(1) ("Upon receiving funds or other property in which a client has an interest, *or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract*, the lawyer shall promptly notify the client or 3rd party in writing." (emphasis added)). The medical providers and lienholders are the beneficiaries to whom the trustee owes equitable duties to deal with the property for their benefit. The trust *res* is the $400,000 funded by the Insurer or Employer. *Cf. 4 Collier on Bankruptcy* ¶ 522.09[11], at 522–79 (16th ed. 2020) ("Though ostensibly belonging to the debtor, medical payments are

actually not the property of the debtor, but are held in trust for another. Any payment for medical expenses, therefore, is held in trust for the person to whom the medical expenses are owed, since it is not property of the estate and need not be claimed as exempt.") (discussing the exemption available under 11 U.S.C. § 522(d)(11) for payment "on account of personal bodily injury" and citing the legislative history of 11 U.S.C. § 541, quoted *supra* Sec. A.1).

This clarity notwithstanding, Fortune describes the OWCH Order's directive to place the $400,000 in his firm's trust account as a "coincidence," and says the use of the trust account "does not establish the existence of a legal [t]rust." AP-ECF Doc. No. 52, at 14. He cites to *Otjen v. Frohbach*, 148 Wis. 301, 134 N.W. 832 (1912) (writing employed to create a valid trust as part of a will must be reasonably certain as to property, the beneficiaries, nature of their interests and manner of performance) and *In re Mueller Travel Agency, Inc.*, 56 Wis. 2d 207, 211, 201 N.W.2d 589 (1972) for support. These cases are inapplicable; interpretive rules for testacy, as discussed in *Otjen*, and the use of depository accounts, as discussed in *Mueller*, are distinct scenarios that do not assist in interpreting the plain terms of a court order issued under the Chapter 102 framework.

Even though the OWCH Order does not use the words "to be held in trust," the effect is the same. An earlier bankruptcy case considered an objection to exemption based on asserted prepetition trust funds. *Venne v. Lenk (In re Lenk)*, 44 B.R. 814 (Bankr. W.D. Wis. 1984). In *Lenk*, the court explained at least three circumstances when courts will find a trust exists:

"when a state statute defines the relationship as a trust, when the relationship has the typical attributes of a trust or when the contract expressly creates a trust." 44 B.R. at 816 (quoting *In re Talcott*, 29 B.R. 874, 878 (Bankr. D. Kan. 1983)).

In *Lenk*, the debtor's son had an accident while driving his father's uninsured car. The plaintiffs sued the son and his father, Mr. Lenk, and the Department of Transportation (DOT) required Mr. Lenk to deposit $13,250, pursuant to the Wisconsin Financial Responsibility Law, in case of a judgment for the plaintiffs. To fund the deposit, the Lenks mortgaged their homestead. Later, Mr. Lenk died, and the homestead was foreclosed upon. Mrs. Lenk filed for bankruptcy and claimed the $13,250 deposit with DOT as exempt homestead proceeds. Several months later, the plaintiffs obtained a default judgment against Mr. Lenk's estate and sought recovery from the DOT deposit, asserting that the monies were held in trust by the DOT for plaintiffs' benefit and were not property of the estate. The court considered a statutory trust need not contain the words "trust," "trust funds," or "held in trust" in order to be deemed a statutory trust. *Id.* By making the $13,250 deposit, the Lenks were the settlors, the DOT acted as the trustee, and the plaintiffs were the beneficiaries. The trust *res* was the $13,250 deposit. The Lenks had no control over the funds once deposited; the DOT held the funds with a single purpose, for the benefit of the plaintiffs. The debtor had no legal or equitable interest in the funds unless there should be a determination of no liability in the personal injury action. Because the state court issued a judgment for the plaintiffs, the

trust funds were for the benefit of the plaintiffs and were not property of the estate or exemptible.

Here, the only entities that can claim both legal and equitable interests in the funds are "medical providers and lienholders." The OWCH Order not only specified conveyance of the $400,000 to the Fortune firm trust account, but was an order giving notice that "medical providers and lienholders" of Ryan have an interest therein.

Accordingly, the OWHC Order established an express trust for the benefit of Ryan's "medical providers and lienholders." Under 11 U.S.C. § 541(d), the $400,000 in the Fortune firm trust account is excluded from the bankruptcy estate. And as those funds never became property of the estate, there is no merit to Ryan's claim of exemption of those funds.[10]

## C. Does Sec. 102.27(1), Wis. Stat. Preclude an Express Trust or Otherwise Exempt the Trust Funds?

The defendants, while not expressly invoking *Dowe*'s prescription that the proceeds of a compromise award under the Act "must be disposed of in accord with the terms of the statute," 219 Wis. at 195, rely heavily on Wis. Stat. § 102.27(1) to oppose Prpa's express trust theory and to support Ryan's claimed exemption. They view Wis. Stat. § 102.27(1) to be a broad shield for the employee. They view it to protect any amounts, whether via approved

---

[10] *See infra* Sec. E (discussing any future interest Ryan may hold).

compromise or liability award, solely for the employee (and his lawyer). The text of that subsection provides:

**Claims and awards protected; exceptions**

(1) Except as provided in sub. (2), no claim for compensation shall be assignable, but this provision shall not affect the survival thereof; *nor shall any claim for compensation, or compensation awarded, or paid, be taken for the debts of the party entitled thereto.*

Wis. Stat. § 102.27(1) (emphasis added).

When interpreting Wisconsin statutes, the Court must "begin[] with the language of the statute. . . [Generally speaking,] [s]tatutory language is given its common, ordinary, and accepted meaning . . . ." *State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 663, 681 N.W.2d 110. Context and structure of a statute help a court to determine meaning, so the Court must interpret Wis. Stat. § 102.27(1) "not in isolation but as part of a whole." *Id.*

The defendants employ circular reasoning. In their view, because Ryan is the only party with standing to bring a worker's compensation claim, he is the only "party entitled to" compensation under the Act, and because he is the only "party entitled to" anything, then all monies approved by the OWCH Order are "compensation" and must belong to Ryan, which monies are then protected from creditors under Wis. Stat. § 102.27. AP-ECF Doc. No. 54, at 9. Prpa takes a broader view of § 102.27(1) and its place in the statutory scheme. Prpa argues that the subsection does not defeat the plain reading of OWCH Order, which allocates separate categories of payment, including an express trust with

a *res* of $400,000 to be disbursed to medical providers and lienholders, the beneficiaries.

Viewing the context of the statute as a whole, an adjacent subsection within the Act assists in the proper interpretation.

Subsection 102.26(3), provides in relevant part:

**Fees and costs**

(a) Except as provided in par. (b), compensation exceeding $100 in favor of any claimant shall be made payable to and delivered directly to the claimant in person.

(b) 1. Subject to sub. (2), upon application of any interested party, the department or the division may fix the fee of the claimant's attorney or representative and provide in the award for that fee to be paid directly to the attorney or representative.

2. At the request of the claimant medical expense, witness fees and other charges associated with the claim may be ordered paid out of the amount awarded.

  . . .

Wis. Stat. § 102.26(3). This subsection describes several different categories of payment that may arise after an employee-claimant has made and resolved a claim: (1) compensation due to the employee, *see* § 102.26(3)(a); (2) fees to be paid to the employee-claimant's attorney, *see* § 102.26(3)(b)1.; and (3) expenses for medical services (and witness fees and other charges) related to the claim, to be paid to third parties such as medical providers, *see* § 102.26(b)2.

The defendants fail to come fully to terms with the text of § 102.26(3) that authorizes payments to or expenses for medical providers. Ryan argues that the phrase "at the request of claimant" in § 102.26(3)(b)2., as opposed to "upon application" in § 102.26(3)(b)1., means that Ryan has "the sole right to

make the determination as to who gets paid" and that the OWHC Order "is silent as to which creditors will be paid" or in what amount. AP-ECF Doc. 64, at 1. The defendants assert that Ryan—as the claimant—never requested that Judge Doody award payment to any medical providers. But this assertion is incompatible with the terms of the Compromise Agreement that Ryan, et al. presented to Judge Doody, and which they knew would likely become the basis for a confirmed OWCH Order.

In contrast, Prpa describes that Ryan directly received a lump-sum payment of $120,000 in accordance with § 102.26(3)(a), and that is Ryan's only compensation under the OWCH Order. Prpa argues that because the $400,000 was *not* disbursed directly to Ryan as part of his lump sum payment, but was directed to be held in trust, the $400,000 must have been intended to satisfy medical expenses, in accordance with § 102.26(3)(b)2.[11, 12]

A reading of sections 102.27(1) and 102.26(3) that harmonizes these provisions is one that recognizes not *all* funds ordered to be paid pursuant to

---

[11] Fortune characterizes Prpa's position to say § 102.27(1) protects a medical creditor's debts. AP-ECF Doc. No. 65, at 4. This is a bald mischaracterization and ignores the operation and structure of § 102.26(3).

[12] Prpa also offers a Labor and Industry Review Commission decision to support his position that compensation can be directed to parties for medical expenses separate from the employee-claimant's compensation. *See Daisy Brantley v. County of Kenosha*, WC Claim No. 2014-008087 (Wis. Lab. Ind. Rev. Com. Apr. 11, 2016), available at https://lirc.wisconsin.gov/wcdecsns/1670.htm; *and* AP-ECF Doc. No. 63-1. But *Brantley* is not directly on point, because there was already a finding of compensable injury and therefore different subsections of the Act came into play. *See Schenkoski v. Labor & Indus. Review Comm'n*, 203 Wis. 2d 109, 114, 552 N.W.2d 120 (1996) (discussing the difference in an employer's continuing obligation under § 102.42(1) after a finding of liability and a full and final compromise under § 102.16(1)). Nor is Fortune's description of *Brantley*—that the Commission remanded because it "refused to pay the medical provider, directly"—an accurate representation of the decision.

an OWCH order approving a compromise constitute compensation to which the employee claimant is entitled. In this case, the OWCH Order approving the Compromise Agreement specified that compensation of $120,000 be paid directly to Ryan. It is only this amount that Ryan may exempt in his bankruptcy schedules under § 102.27(1). No interpretation of the Act would render the other two categories of payments provided by the OWCH Order— (1) an attorney fee of $30,000 (the statutory rate of 20% of a claimant's recovery, *see* Wis. Stat. § 102.26(2)) to be paid directly to Ryan's counsel; and (2) $400,000 be placed in a trust for disbursement to medical providers and lienholders—compensation to which Ryan is entitled.[13]

There is little case law applying subsection 102.27(1). The defendants urge that *In re Brien,* 128 B.R. 220 (Bankr. E.D. Wis. 1991) supports their view that all categories of payment under the OWCH Order belong to Ryan. But the *Brien* case does not address the question of discrete payment types. In *Brien*, the debtor's husband ceased working after long-term dust exposure and chronic lung disease. He died after a long hospitalization. *Id.* Faced with his medical bills, his widow filed for Chapter 7 bankruptcy relief. A worker's

---

[13] The fact that the Act provides that Fortune's attorney fees are calculated as a percentage of Ryan's recovery, but are not based on his claimed medical expenses is further indication that the disbursement to medical providers is not part of the compensation intended for Ryan. *See* Wis. Stat. § 102.26(2) (Unless previously authorized by the department or the division, no fee may be charged or received for the enforcement or collection of any claim for compensation nor may any contract for that enforcement or collection be enforceable when that fee, inclusive of all taxable attorney fees paid or agreed to be paid for that enforcement or collection, exceeds 20 percent of the amount at which the claim is compromised or of the amount awarded, adjudged, or collected, except that in cases of admitted liability in which there is no dispute as to the amount of compensation due and in which no hearing or appeal is necessary, the fee charged may not exceed 10 percent . . . .).

compensation claim he had begun was settled several months later, with his employer and insurer agreeing to pay his estate a lump-sum award, and after payment of fees and costs, $59,611.50 was to be disbursed "To Florence Brien," his widow. *Id.* at 221. An administrative law judge approved the agreement "in full settlement of any and all liability (that [the employer and insurer]) may have . . ." *Id.* The issues were whether the debtor, Mrs. Brien, received the funds "as the party entitled thereto" under § 102.27(1), what portion of the $59,611.50, if any, was property of the bankruptcy estate, and whether it was exempt under any of several Wisconsin worker's compensation statutes. *Id.* at 221. The settlement amount was not segregated into disability benefits, death benefits, or otherwise. A medical provider argued that because the lump-sum payment was not segregated, part of the payment might include reimbursement other than worker's compensation and thus not be protected by § 102.27. *Id.* The *Brien* court concluded that the debtor was "the party entitled thereto" under § 102.27(1), and the $59,611.50 in settlement proceeds made directly payable to her were exempt. *Id.* at 224.

The *Brien* decision considered a single payment of a lost wage benefit. The *Brien* court had no occasion to consider an OWHC Order that provided for separate categories of payments, including a wage loss/compensation payment directly to the employee, in addition to a payment fund for medical providers, as in the present case. The *Brien* decision does not aid the defendants' argument.

In sum, interpreting the OWCH Order to identify the $400,000 as reserved in trust for medical expenses is consistent with § 102.26(3)(b)2., and does not affect Ryan's entitlement to (and ability to exempt) his payment of $120,000 (a compromise of his claim for compensation) under § 102.27(1), nor the Fortune firm's entitlement to its fee ($30,000) under § 102.26(3)(b)1. *See Dowe*, 219 Wis. at 195 (confirming that the proceeds of the award must be disposed of in accordance with the terms of the statute).

**D.     Is A Constructive Trust Warranted?**

Even if the Court were to conclude that the OWHC Order did not create an express trust for the benefit of Ryan's medical providers and lienholders, the Court would find a basis to impose a constructive trust on the $400,000.

A constructive trust is an equitable device created by state law to remedy injustice. *Gross Common Carrier, Inc. v. DeSotelle*, No. 91-52860-11, 1992 WL 12003982, at *4 (Bankr. W.D. Wis. Aug. 14, 1992) (citing *Wilharms v. Wilharms*, 93 Wis. 2d 671, 678, 287 N.W.2d 779 (1980)). Under Wisconsin law, the imposition of a constructive trust requires the following elements:

> (1) a trust is needed to avoid unjust enrichment, (2) the party obtained title to a specific *res* via fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or any form of unconscionable conduct.

*In re LaLonde*, 431 B.R. 199, 207 (Bankr. W.D. Wis. 2010) (citing *Wilharms*, 93 Wis. 2d at 678); *Mumm v. Adametz* (*In re Adametz*), 53 B.R. 299, 305–06 (Bankr. W.D. Wis. 1985).

A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Tikalsky v. Friedman*, 2019 WI 56, ¶ 20, 386 Wis. 2d 757, 777, 928 N.W.2d 502, *reconsideration denied*, 388 Wis. 2d 656 (quoting *Schmalz v. McKenna*, 58 Wis. 2d 220, 228, 206 N.W.2d 141 (1973)). It exists as a remedy for the defendant's failure to perform an antecedent duty, which is the cause of action. *Id.*

But the circumstances where a constructive trust will be imposed are limited; not every situation of unjust enrichment warrants this remedy. *Wilharms*, 93 Wis. 2d at 678–69. It must be a case of "unjust enrichment-plus," meaning there also must be some wrongful conduct, such as actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or any form of unconscionable conduct. *In re LaLonde*, 431 B.R. at 208 (explaining that Wisconsin courts have never precisely defined the catch-all phrase "commission of a wrong," but constructive trust decisions have emphasized a flexible standard that simply examines whether there is some kind of wrongful conduct).

Prpa argues that allowing the defendants to keep—for their personal use and benefit—the funds to which they have no entitlement is unjust enrichment in the amount of $400,000. Prpa contends that this case meets the "plus" element required to impose a constructive trust, pointing to the defendants' failure (or "refusal," AP-ECF Doc. No. 55, at 16) to release the $400,000 trust funds to Ryan's medical providers and lienholders, despite agreeing upon the

provision and language in the Compromise Agreement and being directed to do so by the OWCH Order. AP-ECF Doc. No. 55, at 16.

The defendants categorically oppose this remedy by denying any unjust enrichment and denying any fraudulent conduct. They argue against a constructive trust, not by examining the elements, but by heaving a netful of red herring. Fortune recharacterizes the OWCH Order to have awarded Ryan a lump-sum $550,000 award, representing all components ($120,000 + $30,000 + $400,000), and argues that there cannot be unjust enrichment because even that total is less than Ryan's possible award if the parties had not settled. AP-ECF Doc. No. 65, at 3. He requests that the Court take judicial notice of how worker's compensation awards are calculated and tally up Ryan's projected losses and expenses to find that his award of compensation should have exceeded $680,000.

The Court declines Fortune's request to take judicial notice of what the statutory tables would provide for Ryan's disability payments over his lifetime, or his life expectancy, etc., as he implicitly seeks to relitigate the worker's compensation claim in this Court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 400 U.S. 462 (1983) (establishing the principle that lower federal courts have no jurisdiction to review state-court judgments); *see also Meyer v. Industr. Comm'n*, 13 Wis. 2d 377, 108 N.W.2d 556 (1961) (holding that order confirming compromise is not reviewable). As described above, the Court has distinguished compensation for an employee-claimant from other categories of the award, and the statutory

analysis herein confirms that Ryan's compensation under the OWHC Order was limited to $120,000. Whatever Ryan "could have" been awarded given a full administrative hearing and finding of liability is not a basis to determine unjust enrichment. Moreover, the case law confirming that administrative law judges will not approve settlements that act as a "ruse" persuade this Court that the OWHC Order entered by Judge Doody was not a "wink wink" sleight of hand to funnel $550,000 directly to Ryan. *See supra* Sec. B, *Tesmer*, 161 at 740 n.2. Ryan and Fortune are being unjustly enriched by maintaining control over the funds held in the firm trust account, despite the plain directive in the OWHC Order for disbursal.

The next inquiry for the Court is to consider whether there is "unjust enrichment-plus." The Court finds the defendants' failure to disburse the funds in accordance with the OWCH Order, and the absence of any evidence of negotiation or payment to medical providers and lienholders once those funds were conveyed to the Fortune firm trust account to be the type of "mistake" that courts will recognize as grounds for enforcing a constructive trust. *See Dubis v. Zarins (In re Teranis)*, 128 F.3d 469, 473 (7th Cir. 1997) ("Mistake may also arise when the property is not conveyed despite the grantor's intention to convey. In other words, mistake occurs when the wrong person receives the property.") (citing *Wilharms*, 93 Wis. 2d at 680 n.2). In *Teranis*, the Seventh

Circuit explained "mistake" as one of the bases for imposing a constructive trust:

> Mistake in the legal sense is . . . [s]ome unintentional act . . . or error arising from ignorance, surprise, imposition, or misplaced confidence. . . . A mistake exists when a person, *under some erroneous conviction* of law or fact, does . . . some act which, but for the erroneous conviction, he would not have done. . . .

128 F.3d at 473 (emphasis in original) (quoting BLACK'S LAW DICTIONARY 1001–02 (6th ed.1990). The analysis above demonstrates the defendants' erroneous conviction of law. They wholly misapprehend § 102.27(1). So, whether it is failing to negotiate and pay out the $400,000 in funds set aside expressly for medical providers and lienholders once the OWHC Order was entered, or their erroneously narrow focus on § 102.27(1) without statutory context, these defendants have committed a "mistake." Their mistake, plus their own unjust enrichment, constitute a basis to impose a constructive trust on the $400,000.

Accordingly, under § 541(d), the $400,000 in the Fortune firm trust account is excluded from the bankruptcy estate, and there is no merit to Ryan's claim of exemption of those funds.[14]

**E.    Is There A Remainder Interest?**

The OWCH Order includes a provision regarding the $400,000 in trust: "it being understood that from any balance remaining, the applicant, Rodney Lee Ryan, shall receive 80 percent and Fortune & McGillis SC shall receive 20 percent." Under either theory of recovery, Prpa described that the defendants

---

[14] *See infra* Sec. E (discussing any future interest Ryan may hold).

may have a remainder interest, under Wis. Stat. §§ 700.03(2), 700.04(2).[15] But under the terms of the Order, the possibility for Ryan or the Fortune firm to receive any portion of the $400,000 could arise only after "disbursement to medical providers and lienholders" had been accomplished.

Even if Ryan has an equitable future interest in the funds (which interest would be property of the bankruptcy estate), Ryan's ability to realize on that interest is contingent on there being any remaining balance. There is no dispute that the record at the time of the OWHC Order, and at the time the Ryans filed their bankruptcy case, showed medical bills well over $800,000. As Ryan's total medical debt of approximately $870,684 swallows the $400,000 payment, any equitable remainder interest would have no value in the Ryans' bankruptcy.

## CONCLUSION

Plaintiff Prpa's objection to debtors' claim of exemption in the main bankruptcy case is sustained, and there is no equitable interest for the Ryans to exempt in the $400,000 segregated funds identified in the OWCH Order and currently held in the Fortune & McGillis trust account. The Court grants summary judgment in favor of the plaintiff by determining that the $400,000 is

---

[15] **Wis. Stat. § 700.03 Classification of present and future interests.** . . . (2) A future interest, which does not entitle the owner to possession or enjoyment of the benefits of property until a future time.

**Wis. Stat. § 700.04 Classification of future interests.** Future interests are classified as: . . . (2) An interest created in a person other than the transferor or the transferor's successors in interest, called a remainder, to take effect at the termination of a preceding interest created at the same time or without the intervention of such a preceding interest.

not property of the estate, due to the creation of an express trust or,

alternatively, by imposing a constructive trust. The Court will enter separate

orders consistent with this decision.


Dated: March 24, 2021

By the Court:

Beth E. Hanan
United States Bankruptcy Judge